[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 18, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-15077
Non-Argument Calendar
_____

D.C. Docket No. 02-00357-CV-C-W

JOE STREET,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART, Commissioner of
Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(May 18, 2005)**

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Joe Street appeals the district court's order affirming the Social Security Commissioner's denial of supplemental security income benefits, 42 U.S.C. § 1383(c)(1). He argues on appeal that the administrative law judge ("ALJ") disregarded evidence of his mental impairments, and that the ALJ's decision finding him not disabled as of March 1, 2001, was not, therefore, supported by substantial evidence. For the reasons set forth more fully below, we affirm.

On September 17, 1996, Street filed an application seeking supplemental security income benefits, claiming a disability that began June 1, 1996. Street described his disabling condition as high blood pressure, dizziness, ulcers, and having a "spot about the size of a nickel in [his] chest." His application was denied initially and on reconsideration. In his reconsideration disability report, Street, when asked to describe any physical or mental limitations as a result of his condition, had listed that he had trouble bending and stooping, both of which caused him to black out at times, that his chest hurt and he suffered from shortness of breath, and that he continued to have blood in his urine. No mental limitation was described.

Street then requested and received a hearing before an administrative law judge ("ALJ"), who concluded that Street was not disabled. During his hearing with the ALJ, Street never mentioned any mental disability, describing instead his

2

ulcers, chest pains, high blood pressure, and blacking out. Accordingly, the ALJ's decision was silent on any issue of mental disability as well. The Appeals Council affirmed the ALJ's decision. However, the district court for the Middle District of Alabama reversed and remanded that decision, finding that the ALJ failed to state reasons for rejecting portions of Street's testimony and improperly applied the "pain" standard. The Appeals Council then remanded to an ALJ for a new hearing.

Street was 54 years old at the time of the second hearing and had completed only a seventh grade education. He had previously worked as painter, moving paint weighing up to 25 pounds, carrying ladders, and scraping houses. Street stopped painting sometime in 1991, and that was his last job. Street had also worked in construction as a carpenter's helper and as a mason's helper, both of which required him to lift up to 25 pounds and involved standing. Finally, Street at one time worked for a lawn service, unloading lawn mowers weighing up to 40 pounds and cutting lawns and raking leaves.

At the hearing, Street claimed that he suffered shortness of breath and pain in his leg and chest. Street's testimony at the hearing was well-summarized by the ALJ:

> Shortness of breath, leg pain, and passing out prevent [Street] from working. He experiences toothache-like pain in his leg. His chest is very sore. The pain is 5 or 6 at times on a scale of 0 to 10, with 0 representing the absence of pain and 10 representing the most

3

excruciating pain imaginable. The pain generally persists for 1 hour. Sometimes it does not last that long and sometimes it lasts longer. The pain is located in his left chest and the top of his foot. The foot pain is constant. Too much walking precipitates the pain. He does not take pain medication. He has improved since surgery. The chest pain has eased up. He has chest pain some of the time for a minute or two, but never for an hour. He has shortness of breath the majority [of] the time but it is not as bad as before surgery.

At no point during his testimony did Street mention a psychological impairment, such as depression or anxiety.

Street further testified that, despite his physical impairments, he can use both hands to grip items and to manipulate small objects with his fingers. Street stated he could probably lift as much as 10 pounds with both hands from a seated position, had the ability to stand for about 30 minutes straight, and could probably stand up to four hours of an eight-hour day with some breaks. He also testified that he could probably remain seated for up to one hour and, with breaks, could probably sit six hours of an eight-hour day. Street is capable of walking 15 to 20 minutes at a time, and believed he could walk perhaps three or four hours out of an eight-hour day. The maximum amount of weight he could lift is about 20 pounds.

When asked what chores Street performed on a regular basis, he replied that he sometimes washes dishes, sweeps, makes beds, walks, goes to church, watches TV, and goes visiting, but does not cook, iron, mop, vacuum, shop, go to the movies or do garden work. He also does not attend sporting events because he

4

"can't stand crowds." He further testified that, if required, he could probably sit for two hours at a time with short breaks in between for five days per week on a consistent basis.

A review of Street's medical history showed that, on June 6, 1992, Street was treated for an abdominal stab wound. No other medical records appear until 1996, when Street received treatment from the Baptist Medical Center for chest and abdominal pain, the records revealing that no abnormalities were seen and that Street was diagnosed with stomach ulcers. In 1997, Dr. Glenda Atilano wrote a letter indicating that Street had recently suffered a heart attack and continued to suffer from hypertension and peptic ulcer disease, preventing Street from being gainfully employed. A similar letter was written by Dr. Michael Jackson.

On May 14-16, 1997, Street sought medical treatment for chest pains, and it was ultimately determined, after conducting several tests, that he suffered from coronary artery disease and unstable angina (a severe, constricting pain involving the chest). However, on October 29, 1997, a chest x-ray revealed no abnormalities in Street's chest, consistent with a June 4, 1997, diagnosis indicating that Street's chest pain was non-cardiac in origin.

Later, on November 20, 2000, Street again sought treatment for chest pain and was diagnosed with coronary artery disease. A second opinion confirmed that

diagnosis and also confirmed that Street suffered from unstable angina, and it was recommended that Street receive elective bypass surgery, to which Street consented. The surgery was performed on November 28, 2000, and was successful. On January 8, 2001, Street had a post-surgery follow-up visit, where the treating physician found that "[h]is incisions have all healed. His leg hematoma has resolved. His lungs sounded clear and he is ambulating without difficulty. He is back to full level of activity."

Two months later, on March 7, 2001, Street had another follow-up visit, where he stated that he was doing well with the exception of an occasional sharp, shooting pain in his chest that lasted only a second. Street's physician told him that the pain was probably chest-wall pain and not cardiac-related. A few months later, however, on July 6, 2001, Street visited Dr. Robert Combs for a disability determination, and his chief complaint was that he was "tired." Combs found that Street's heart was normal, as were his lungs, and with regard to Street's chest pain, stated that it "seems to be chest wall pain at this time. There is some nonspecific left upper . . . chest pain which is not related to exertion. It is not severe." Combs then filled out a "medical source opinion," and found that Street was not disabled.

Regarding Street's mental health, the record shows that, on June 8, 1998, Street had a psychological evaluation done before his first hearing with an ALJ,

and that evaluation indicated that Street was "experiencing depression which does appear to be secondary to his medical condition . . . Mr. Street feels that this is not his main problem area. He feels that his main problem which hinders or prevents employability involves his medical condition." Street's test results placed him within the range of borderline intellectual functioning. The report concluded that Street "is experiencing depression and anxiety which are a result of his medical condition . . . [i]f his medical condition could be stabilized, then he would be a candidate for a Vocational Rehabilitation evaluation." At the second hearing, Streets made no mention of any mental impairments, nor did he mention or reference the psychological evaluation at any time.

At the second hearing, a medical expert ("ME"), who listened to Street's testimony and had reviewed his medical records, testified that Street had coronary artery disease, a bypass surgery, and hypertension. The ME stated that, in his opinion, Street was medically impaired from June 1996 until March 2001 after recovery from his bypass surgery. He further testified that the medical records did not correspond with Street's testimony regarding his trouble sitting or standing, and that the shooting pain in his chest was not unusual as a side effect or symptom of post-bypass surgery. The ME stated that Street's "impairment is no longer present because he's had bypass surgery. And there shouldn't be a limitation of

work just based on coronary artery disease." Based upon the disability evaluation done by Dr. Combs, the ME stated that Street could still do light work or sedentary work and opined that Street "could sit two to three hours with a break and then come back and sit more." He further testified that Street could stand one to two hours in succession, was capable of walking 30 to 45 minutes without stopping, and frequently lifting 10 pounds. The only restrictions, in the ME's opinion, were that Street avoid working at unprotected heights or around moving machinery. His remaining findings were that Street could frequently push and pull with his legs, occasionally bend, squat, crawl, be exposed to marked changes in temperature and humidity, and use his right hand for fine manipulation, and that Street could frequently reach, and use his left and right arms for pushing and pulling arm controls and grasping.

Lastly, a vocational expert ("VE"), who had reviewed the record and was present during Street's testimony, stated that Street had, in the past, worked as a construction worker and labor worker, and that he was incapable of performing those jobs at present. The ALJ then posed the following hypothetical to the VE:

> Please assume an individual the claimant's age 54, education seventh grade, and past relevant work experience. Please assume that I find him capable of performing the exertional demands of a reduced range of light work in that the hypothetical individual can only occasionally lift or carry up to 15 pounds . . . please factor in your response the following other . . . limitations. Can frequently use his left and right

8

arms for simple grasping, pushing and pulling of arm controls. Can frequently use his left arm for fine manipulation. Can frequently use his legs for pushing and pulling leg controls. Occasionally bend, squat, crawl, never climb, frequently reach, never work around unprotected heights, moving machinery, occasionally operate motor vehicle equipment. Occasionally be exposed to marked changes in temperature and humidity. For purposes of this hypothetical, experiences a moderate degree of pain . . . do you have an opinion of whether such an individual could perform any of the past relevant work you identified?

The VE responded that such an individual could not perform Street's past relevant work. However, assuming the same hypothetical, the VE testified that such an individual could work as a (1) food checker, 11,000 jobs in the state and 600,000 in the national economy; (2) greeter, 1500 jobs in the state, 150,000 in the national economy; (3) parking lot attendant, 500 in the state, 66,000 in the national economy; or (4) small parts assembler, 2400 in the state, 161,000 in the national economy.

The ALJ, after summarizing all of the evidence, found that Street was disabled within the meaning of the Social Security Act from June 1, 1996, through February 28, 2001. However, after March 1, 2001, the ALJ found that Street had experienced medical improvement following his bypass surgery to the point that his impairments no longer satisfied the level of severity required to meet the medical listings set forth at § 4.04C in 20 C.F.R. § 404, Subpart P, Appendix 1. Because the listings were not met, the ALJ found that the medical improvement

9

was "work-related," requiring an analysis of whether Street maintained any residual functional capacity despite his impairments.

In so doing, the ALJ gave "great weight" to the ME's testimony and opinion because the ME had reviewed the entire medical record, observed Street, and been subject to cross-examination while testifying under oath. The ALJ also gave substantial weight to the opinion of Dr. Combs, as he found the opinion to be supported by clinical examinations and testing as well as the opinions of Street's own treating physicians. Street's subjective testimony concerning his pain was discredited, as the ALJ, after considering a number of factors, found that the objective medical evidence did not match Street's testimony. Furthermore, it found that Street had admitted he was feeling well to his own physicians and that one of his physicians had even released Street to full duty. Finally, it found that Street had the residual functional capacity to perform jobs existing in significant numbers in the national economy, as the VE had described at the hearing. The ALJ's decision became the Commissioner's final decision on January 28, 2002. The district court affirmed the ALJ's decision.

On appeal, Street argues that the district court improperly affirmed the ALJ's failure to find that he had permanent mental impairments that were severe. He argues that, although the ALJ "referred to these mental impairments," the

10

district court and ALJ ignored the psychological report and Street's testimony that he "can't stand crowds." He also argues that the ALJ erred by failing to order a psychiatric evaluation for Street. Finally, Street argues that the ALJ's hypothetical question to the VE failed to take into account his intellectual functioning, and that the district court improperly used new evidence to erroneously find that the error from the deficient question was harmless.

We review a social security case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citation omitted). Even if we find that the evidence preponderates against the Commissioner's decision, we must affirm if the decision is supported by substantial evidence. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

A claimant applying for supplemental security income must prove that he is disabled. 20 C.F.R. § 404.1512; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). The Social Security Regulations outline a five-step sequential evaluation

11

process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones, 190 F.3d at 1228. First, the claimant must show that he has not engaged in a substantial gainful activity. Jones, 190 F.3d at 1228. Second, he must prove he has a severe impairment or combination of impairments. Id. In step three, if his impairment meets or equals a listed impairment, he is automatically found disabled. Id. If it does not, as in the present case, he must prove that he is unable to perform his past relevant work. Id. Finally, if the claimant cannot perform past relevant work, then the burden shifts to the Commissioner in the fifth step to show that there is other work available in significant numbers in the national economy that the claimant is able to perform. Id.

Here, the ALJ found that, beginning on June 1, 1996, Street was disabled, but ceased to be disabled after the last day in February of 2001. The ALJ's specific findings were that, as of March 1, 2001, Street experienced medical improvement that rendered his impairments less severe than any of the listings contemplated by the regulations. Finally, the ALJ found that Street could not perform any of his past relevant work, but that he retained the residual functional capacity to perform other jobs existing in significant numbers in the nationally economy. This determination was based on the testimony of the VE and the hypothetical question posed to the VE; therefore, the focus of Street's appeal is on

12

step five of the determination process. <u>Jones</u>, 190 F.3d at 1228.

As a preliminary matter, the gravamen of Street's argument on appeal is that the ALJ should have, and failed to, consider undisputed evidence of Street's mental impairments and intellectual functioning. However, Street did not list any mental impairment or intellectual functioning issues in his application for SSI benefits, nor did he testify at his hearing that he suffered from any intellectual or mental impairments that would prevent him from working. This failure alone could dispose of his claim, as it has been persuasively held that an "administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" <u>Pena v. Chater</u>, 76 F.3d 906, 909 (8th Cir. 1996). Furthermore, this was not a case where the claimant was unrepresented, subjecting the ALJ to a heightened duty to probe into all of the relevant facts surrounding Street's disability claim. <u>See, e.g.,</u> <u>Brown v. Shalala</u>, 44 F.3d 931, 934-35 (11th Cir. 1995) (holding that, where the right to counsel has not been waived, if claimant is not represented, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.").

The error Street assigns to the ALJ, in the form of a failure to consider Street's intellectual functioning, and, therefore, posing an inadequate hypothetical

question to the VE, was error that Street could easily have corrected at the hearing by putting the ALJ on notice of the deficiency, if indeed one existed based on the record evidence. He failed to do that, and now seeks to have this Court reverse and remand despite the fact that, whatever the evidence of Street's alleged mental impairments or deficient intellectual functioning, that evidence existed at the time of the hearing. Thus, under the persuasive holding of Pena, we find that Street failed to present any evidence to the ALJ that would have put him on notice of a mental or intellectual limitation on Street's ability to function.

In an abundance of caution, however, because Street is correct that the district court found, and the government conceded to the district court, that the ALJ should have considered the psychological evaluation as a possible basis for impairment, we reconcile whether the ALJ's determination, that Street ceased being disabled as of March 1, 2001, is supported by substantial record evidence, including any evidence of mental impairment, and whether the ALJ's hypothetical question was properly supported by the testimony at the hearing. First, the parties do not dispute that the ALJ properly found Street to be disabled for the period beginning June 1, 1996, and ending February 28, 2001. Therefore, the proper focus is on the medical evidence leading to the determination that, as of February 28, 2001, Street no longer suffered a disability. The chronology of events

14

supporting the ALJ's decision is as follows: on November 20, 2000, Street was diagnosed with coronary artery disease, for which Street elected to have a bypass surgery on November 28, 2000.

During the first post-surgery follow-up visit, January 8, 2001, Street's treating physician found that Street's "incisions have all healed. His leg hematoma has resolved. His lungs sounded clear and he is ambulating without difficulty. He is back to full level of activity." Two months later, on March 7, 2001, Street had another follow-up visit, where he stated that he was doing well with the exception of an occasional sharp, shooting pain in his chest that lasted only a second. This pain was determined to be non-cardiac related. Finally, on July 6, 2001, Street visited Dr. Robert Combs for a disability determination, and his chief complaint was fatigue. Combs found Street to have normally functioning heart and lungs, and described Street's chest pain as "unrelated to exertion. It is not severe."

The ALJ also considered Street's testimony establishing that he suffered some physical impairments, such as shortness of breath and pain in his leg and chest. At no point during his testimony, however, did Street mention a psychological impairment, such as depression or anxiety.

Street also testified that, despite his physical impairments, he can use both hands to grip items and to manipulate small objects with his fingers. Street stated

15

he could probably lift as much as 10 pounds with both hands from a seated position, had the ability to stand for about 30 minutes straight, and could probably stand up to four hours of an eight-hour day with some breaks. He also testified that he could probably remain seated up to one hour, and, with breaks, could probably sit six hours of an eight-hour day. Street is capable of walking 15 to 20 minutes at a time, and believed he could walk maybe three or four hours out of an eight-hour day. The maximum amount of weight he could lift is about 20 pounds.

When asked what chores Street performed on a regular basis, he replied that he sometimes washes dishes, sweeps, makes beds, walks, goes to church, watches TV, and goes visiting, but does not cook, iron, mop, vacuum, shop, go to the movies or do garden work. He also does not go to sporting events because he "can't stand crowds." He further testified that, if required, he could probably sit for two hours at a time with short breaks in between for five days per week on a consistent basis. At no point was any mention made of a mental or intellectual impediment of any kind.

Furthermore, a medical expert, who reviewed Street's medical record and was present for Street's testimony, testified that Street's testimony regarding difficulty sitting and standing did not correspond with the medical records and that the shooting pain described in Street's chest was not unusual as a side effect of

post-bypass surgery. The ME opined that Street's impairment is no longer present post-surgery, and that Street could still do light or sedentary work, with the capacity to sit two to three hours with a break, stand one to two hours, and complete 30-45 minutes of walking at Street's own pace. His remaining findings were that Street could frequently push and pull with his legs, occasionally bend, squat, crawl, be exposed to marked changes in temperature and humidity, and use his right hand for fine manipulation, and that Street could frequently reach, and use his left and right arms for pushing and pulling arm controls and grasping. Notably, the ALJ gave the ME's testimony "great weight" given that the ME had been present for Street's testimony, reviewed all of Street's medical history, and had testified under oath subject to cross examination.

The only evidence of any kind mentioning Street's mental health and intellectual functioning is a psychological evaluation, completed June 8, 1998, prior to Street's first hearing before an ALJ, and, notably, within the time period during which the ALJ found Street disabled. As previously noted, neither Street nor his attorney mentioned this evaluation to the ALJ during the hearing, nor was it ever argued that Street was suffering from anxiety or depression. The ALJ was never directed to the evaluation, nor was any depressive symptom listed in Street's application for benefits. These deficiencies aside, however, the evaluation, over

17

three years old by the time Street testified at the second hearing, tied Street's depressive symptoms to his medical condition. The substantial evidence and opinion testimony offered at the hearing established that Street's medical condition was improved, and that post-surgery, Street was returned to "full activity."

Thus, in the absence of Street or his attorney arguing to the contrary, it would appear from the record evidence that the ALJ's failure to mention any psychological, mental, or other intellectual impairment, was not in error, but rather amply supported by the (1) dearth of evidence suggesting that Street continued to suffer from any psychological, mental, or other intellectual impairment, and (2) medical evidence suggesting that Street's previous mental condition, which had once caused him to display depressive symptoms, had been effectively treated.

Accordingly, the ALJ's hypothetical question to the VE was posed as follows:

> Please assume an individual the claimant's age 54, education seventh grade, and past relevant work experience. Please assume that I find him capable of performing the exertional demands of a reduced range of light work in that the hypothetical individual can only occasionally lift or carry up to 15 pounds . . . please factor in your response the following other . . . limitations. Can frequently use his left and right arms for simple grasping, pushing and pulling of arm controls. Can frequently use his left arm for fine manipulation. Can frequently use his legs for pushing and pulling leg controls. Occasionally bend, squat, crawl, never climb, frequently reach, never work around unprotected heights, moving machinery, occasionally operate motor vehicle equipment. Occasionally be exposed to marked changes in

18

temperature and humidity. For purposes of this hypothetical, experiences a moderate degree of pain . . . do you have an opinion of whether such an individual could perform any of the past relevant work you identified?

(Id. at 257-58). This question summarized all of the testimony and opinion evidence presented to the ALJ at the hearing. Despite having never directed the ALJ's attention to the psychological evaluation, never argued a mental or other intellectual impairment, or requested that the ALJ amend his hypothetical in any way, Street argues that the question posed to the VE was in error for failing to mention anything regarding his intellectual functioning.

However, as noted above, the substantial weight of the evidence did not support a finding that Street was suffering from any sort of mental impairment, and, therefore, without any sort of indication from Street that he sought to rely on his mental condition as well as his physical condition to support his application for benefits, the ALJ's question properly cited the limitations Street faced based on the testimony at his hearing. Cf. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) (holding that an ALJ is "not required to include findings in the hypothetical question that the ALJ [has] properly rejected as unsupported.").

Finally, to the extent that Street argues that the ALJ should have ordered a consultative psychological examination based on the record evidence, Street's argument lacks merit. Street's argument first relies on the 1998 psychological

evaluation, unmentioned and unargued at his hearing, and secondly, on Street's testimony that he "can't stand crowds," spoken after he had been asked whether he attends sporting events, which he argues was sufficient testimony to put the ALJ on notice of some sort of psychological, mental, or intellectual impairment.

First, Street's testimony does not give rise to an inference that, because he can't stand crowds and doesn't attend sporting events, he suffers from a psychological, mental, or intellectual impairment of any kind. Secondly, the 1998 report that he continually points to, as noted above, while indicative of depressive symptoms during the period of his disability, does not suggest that those depressive symptoms continued, and, if anything, suggests that since Street's medical condition has been treated, his depressive symptoms associated with that condition should no longer be present. Finally, as previously noted, the failure of the ALJ to consider any of Street's presently alleged psychological, mental, or intellectual impairments is because Street and his counsel failed to cite anything other than a physical condition as the basis for Street's disability in his application and in his testimony at trial. Therefore, he should not be permitted to complain after the fact that the ALJ improperly failed to make an explicit factual finding regarding those alleged mental conditions. See Pena, 76 F.3d at 909 (8th Cir. 1996).

Stated another way, if Street's alleged mental condition was an impairment severe enough to rise to the level of a disability, it was his burden to prove as much to the ALJ under steps two to four of the determination process. <u>Jones</u>, 190 F.3d at 1228. The failure to list any mental impairment in his application or to testify about having depressive symptoms affecting his ability to work or focus or otherwise function demonstrated a failure to prove that, at the time of his second hearing, after surgery had been performed and competent medical opinions had been elicited showing that Street's condition was better to the point of resuming "full activity," Street failed to carry his burden.

Accordingly, we conclude that (1) Street failed to allege a mental impairment in his application or testimony before the ALJ, (2) substantial evidence supported the ALJ's determination that Street was no longer disabled after March 1, 2001, and (3) the ALJ did not improperly ignore Street's depressive symptoms from 1998, based as they were on a medical condition that had since been treated effectively, and the lack of any testimony, record of treatment, or any other evidence of any kind suggesting a mental impairment. We, therefore, affirm.

**AFFIRMED.**

21