IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 EASTERN DIVISION 

ANNE ECHOLS, ) 
 ) 
Plaintiff, ) 
 ) 
v. ) Case No.: 3:19-cv-836-SMD 
 ) 
ANDREW SAUL, ) 
Commissioner, Social Security ) 
Administration, ) 
 ) 
Defendant. ) 

 MEMORANDUM OPINION AND ORDER 

I. INTRODUCTION 
Anne Echols (“Plaintiff”) filed a Title II application for a period of disability and 
disability insurance benefits and a Title XVI application for supplemental security income 
in May 2017 alleging disability beginning in February 2017. R. 15, 155–65. The 
application was denied at the initial administrative level, and Plaintiff requested and 
received a hearing before an Administrative Law Judge (“ALJ”) on November 15, 2018. 
R. 15, 101–45. Following the hearing, the ALJ issued an unfavorable decision, and the 
Appeals Council denied Plaintiff’s request for review on October 17, 2019. R. 1–3. The 
ALJ’s decision consequently became the final decision of the Commissioner of Social 
Security (“Commissioner”).1 See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). 

1 Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-
296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social 
Security matters were transferred to the Commissioner of Social Security. 
The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 
U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of 
a final judgment by the undersigned United States Magistrate Judge. Pl.’s Consent to 

Jurisdiction (Doc. 10); Gov’t’s Consent to Jurisdiction (Doc. 9). After careful scrutiny of 
the record and the parties’ briefs, and for the reasons herein explained, the Court AFFIRMS 
the Commissioner’s decision. 
II. STANDARD OF REVIEW 
The Court’s review of the Commissioner’s decision is a limited one. The Court’s 

sole function is to determine whether the ALJ’s opinion is supported by substantial 
evidence and whether the proper legal standards were applied. See Jones v. Apfel, 190 F.3d 
1224, 1228 (11th Cir. 1999); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 
1983). 
“The Social Security Act mandates that ‘findings of the Secretary as to any fact, if 

supported by substantial evidence, shall be conclusive.’” Foote v. Chater, 67 F.3d 1553, 
1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the 
Commissioner’s decision conclusive if it is supported by substantial evidence. Graham v. 
Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla 
— i.e., the evidence must do more than merely create a suspicion of the existence of a fact, 

and must include such relevant evidence as a reasonable person would accept as adequate 
to support the conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 
Richardson v. Perales, 402 U.S. 389 (1971)); Foote, 67 F.3d at 1560 (citing Walden v. 
Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)). 
If the Commissioner’s decision is supported by substantial evidence, the district 
court will affirm, even if the court would have reached a contrary result as finder of fact, 
and even if the evidence preponderates against the Commissioner’s findings. Ellison v. 

Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003); Edwards v. Sullivan, 937 F.2d 580, 584 
n.3 (11th Cir. 1991) (quoting MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). 
The Court must view the evidence as a whole, taking into account evidence favorable as 
well as unfavorable to the decision. Foote, 67 F.3d at 1560 (citing Chester v. Bowen, 792 
F.2d 129, 131 (11th Cir. 1986). The Court “may not decide facts anew, reweigh the 

evidence, or substitute [its] judgment for that of the [Commissioner],” but rather it “must 
defer to the Commissioner’s decision if it is supported by substantial evidence.” Miles v. 
Chater, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting Bloodsworth, 703 F.2d at 1239). 
The Court will also reverse a Commissioner’s decision on plenary review if the 
decision applies incorrect law, or if the decision fails to provide the district court with 

sufficient reasoning to determine that the Commissioner properly applied the law. Keeton 
v. Dep’t of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius 
v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the 
Commissioner’s conclusions of law are valid. Id.; Brown v. Sullivan, 921 F.2d 1233, 1236 
(11th Cir. 1991) (quoting MacGregor, 786 F.2d at 1053). 

III. STATUTORY AND REGULATORY FRAMEWORK 
The Social Security Act’s general disability insurance benefits program (“DIB”) 
provides income to individuals who are forced into involuntary, premature retirement, 
provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 
423(a). The Social Security Act’s Supplemental Security Income (“SSI”) is a separate and 
distinct program. SSI is a general public assistance measure providing an additional 
resource to the aged, blind, and disabled to assure that their income does not fall below the 

poverty line. Eligibility for SSI is based upon proof of indigence and disability. See 42 
U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact they are separate 
programs, the law and regulations governing a claim for DIB and a claim for SSI are 
identical; therefore, claims for DIB and SSI are treated identically for the purpose of 
determining whether a claimant is disabled. Patterson v. Bowen, 799 F.2d 1455, 1456 n.1 

(11th Cir. 1986). 
Applicants under DIB and SSI must prove “disability” within the meaning of the 
Social Security Act which defines disability in virtually identical language for both 
programs. See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 
404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is 

unable to 
[e]ngage in any substantial gainful activity by reason of any medically 
determinable physical or mental impairment which can be expected to result 
in death or which has lasted or can be expected to last for a continuous period 
of not less than 12 months. 

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A “physical or mental impairment” is one 
resulting from anatomical, physiological, or psychological abnormalities which are 
demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 
U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). 
The Commissioner of Social Security employs a five-step, sequential evaluation 
process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 
416.920 (2010). 

(1) Is the person presently unemployed? 
(2) Is the person’s impairment(s) severe? 
(3) Does the person’s impairment(s) meet or equal one of the specific 
 impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? 

(4) Is the person unable to perform his or her former occupation? 
(5) Is the person unable to perform any other work within the economy? 
An affirmative answer to any of the questions leads either to the next 
question, or, on steps three and five, to a finding of disability. A negative 
answer to any question, other than step three, leads to a determination of “not 
disabled.” 

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). 
The burden of proof rests on a claimant through Step 4. See Phillips v. Barnhart, 
357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of 
qualifying for disability once they meet the burden of proof from Step 1 through Step 4. 
At Step 5, the burden shifts to the Commissioner, who must then show there are a 
significant number of jobs in the national economy the claimant can perform. Id. 
To perform the fourth and fifth steps, the ALJ must determine the claimant’s 
Residual Functional Capacity (“RFC”). Id. at 1238–39. RFC is what the claimant is still 
able to do despite his impairments and is based on all relevant medical and other evidence. 
Id. It also can contain both exertional and nonexertional limitations. Id. at 1242–43. At 
the fifth step, the ALJ considers the claimant’s RFC, age, education, and work experience 
to determine if there are jobs available in the national economy the claimant can perform. 
Id. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines (“grids”) 
or hear testimony from a vocational expert (“VE”). Id. at 1239–40. 

The grids allow the ALJ to consider factors such as age, confinement to sedentary 
or light work, inability to speak English, educational deficiencies, and lack of job 
experience. Each factor can independently limit the number of jobs realistically available 
to an individual. Id. at 1240. Combinations of these factors yield a statutorily-required 
finding of “Disabled” or “Not Disabled.” Id. 

IV. ADMINISTRATIVE PROCEEDINGS 
Plaintiff was 43-years-old at the time of the ALJ’s decision. R. 23. She lives in 
Opelika, Alabama, with her long-term boyfriend. R. 18, 46. She has obtained an 
associate’s degree. R. 38. Plaintiff’s primary complaints are osteoarthritis and spinal 
stenosis. R. 18–20. In the past, Plaintiff worked as a caterer/helper, data entry clerk, and 

telephone operator. R. 22. 
Following an administrative hearing, and employing the five-step process, the ALJ 
found at Step One that Plaintiff “has not engaged in substantial gainful activity since 
February 28, 2017, the alleged onset date[.]” R. 17. At Step Two, the ALJ found that 
Plaintiff suffers from the following severe impairments under 20 C.F.R. § 416.920(c): 

spine disorder, post decompressive laminectomy and foraminotomy, hernia with history of 
hernia repair, and obesity. R. 17. But the ALJ concluded at Step Three of the analysis that 
none of Plaintiff’s impairments, nor a combination of her impairments, met or medically 
equaled the severity of one of those listed in the applicable regulations. R. 20. Next, the 
ALJ articulated Plaintiff’s RFC as follows: 
the claimant has the residual functional capacity to perform sedentary work 
as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can climb 
ramps and stairs, but never climb ladders, ropes, or scaffolds; balance 
frequently; sto[o]p occasionally; kneel occasionally; crouch occasionally; 
crawl occasionally; she can never work around unprotected heights; she can 
occasionally work around hazardous moving mechanical parts; and she can 
occasionally operate a motor vehicle. 

R. 20. At Step Four, having consulted with a VE, the ALJ concluded that Plaintiff has past 
work as a caterer/helper, data entry clerk, and telephone operator, and that she “is capable 
of performing past relevant work.” R. 22. The ALJ next concluded, at Step Five, that 
“[a]lthough the claimant is capable of performing past relevant work, there are other jobs 
existing in the national economy that she is also able to perform.” R. 23. Based upon the 
testimony of the VE, the ALJ identified the following as representative occupations: a 
“small parts assembler,” a “Electronics worker,” and a “Laundry folder.” R. 23. 
Accordingly, the ALJ concluded that Plaintiff “has not been under a disability [. . .] from 
February 28, 2017, through the date of this decision.” R. 24. Based on these findings, the 
ALJ denied Plaintiff’s claim. R. 12. 
V. PLAINTIFF’S CLAIMS 
Plaintiff presents two issues for the Court to consider in its review of the 
Commissioner’s decision: (1) Whether the “ALJ failed to properly evaluate Plaintiff’s 
subjective statements;” and (2) whether the “ALJ erred by failing to request a psychological 
examination and by failing to evaluate the severity of [Plaintiff’s] mental impairments.” 
(Doc. 12) at 2. 
VI. DISCUSSION 
A. Rejection of Pain Testimony 
Plaintiff claims the ALJ failed to “properly evaluate [her] subjective statements” 

regarding her pain and her limited daily activities as a result of her pain. “In order to 
establish a disability based on testimony of pain and other symptoms, the claimant must 
satisfy two parts of a three-part test showing: (1) evidence of an underlying medical 
condition; and (2) either (a) objective medical evidence that confirms the severity of the 
alleged pain arising from that condition or (b) that the objectively determined medical 

condition is of such a severity that it can be reasonably expected to give rise to the alleged 
pain.” Wilson, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 
1221, 1223 (11th Cir. 1991)). If a plaintiff establishes evidence of an underlying medical 
condition and either part two or three of the test, the ALJ must then make a credibility 
determination about the plaintiff’s descriptions of her pain. “If the ALJ decides not to 

credit a claimant’s testimony as to her pain, [s]he must articulate explicit and adequate 
reasons for doing so. [. . .] A clearly articulated credibility finding with substantial 
supporting evidence in the record will not be disturbed by a reviewing court.” Foote, 67 
F.3d at 1561–62 (citing MacGregor, 786 F.2d at 1054). 
Plaintiff avers that the ALJ simply used boilerplate language to dismiss her 

subjective testimony of pain and that the ALJ’s “conclusory finding [. . .] did not provide 
‘explicit and adequate reasons’ for finding [Plaintiff’s] statements not supported, as is 
required in the Eleventh Circuit.” (Doc. 12) at 4–5. Plaintiff testified that she became 
disabled on February 28, 2017, when she felt pain shooting down her legs after she was 
standing for a long period of time at work. R. 40. She stated that she has lower back pain 
between the center of her back and the upper part of her tail bone that radiates up her back 
and shoots down her left leg and, at times, her right leg. R. 40–41. Plaintiff testified that it 

is excruciating and chronic pain that lasts all day and is not relieved by using ice, heat, 
stretching, or alternating positions. R. 41. Plaintiff received lumbar facet blocks in 2017 
that began to give her relief but was unable to continue those treatments after she lost her 
insurance. R. 42. However, she was able to receive epidural injections from East Alabama 
Medical Center Pain Clinic because they did not charge the costs up front. R. 42–43. 

Plaintiff stated that she is unable to get prescription strength pain medication from the pain 
clinic, so in addition to the epidurals she takes over-the-counter ibuprofen and BC Powder. 
R. 44. Plaintiff testified that after taking her over-the-counter pain medication, her pain 
level is at an eight on a ten-point scale. R. 44. 
Plaintiff argues that the ALJ failed to provide any reasoning as to why she 

discredited Plaintiff’s testimony beyond the boilerplate language that Plaintiff’s “medically 
determinable impairments could reasonably be expected to cause the alleged symptoms; 
however, the claimant’s statements concerning the intensity, persistence and limiting 
effects of these symptoms are not entirely consistent with the medical evidence and other 
evidence in the record for the reasons explained in this decision.” (Doc. 12) at 4; R. 21. 

However, the undersigned has reviewed the ALJ’s opinion, along with the entire record in 
this case, and finds that the ALJ properly articulated his reasons for discrediting Plaintiff’s 
complaints as to the severity of her pain. 
At Step Two of the five-step process, the ALJ reviewed and discussed Plaintiff’s 
records, stating that with regards to her “musculoskeletal and neurological issues of the 
spine disorder, postcompressive laminectomy and foraminotomy, hernia with history of 

hernia repair, and the pain associated therewith there is no objective evidence to support 
listing level severity under 1.00, and specifically under 1.04 of the spine.” R. 18 (internal 
citations omitted). In discussing the records supporting this conclusion, ALJ noted that: 
Records reveal a history of decompressive laminectomy and foraminotomy 
L3-L4 and L4-L5 in 2016. MRI in March of 2017 showed residual disc 
osteophyte complex and facet arthropath encroachment on the lateral 
recesses, and grade I retrolisthesis. On August 2, 2017, she had lumbar facet 
block. At the consultative examination on August 11, 2017, she had a normal 
gait, normal range of motion, normal motor strength, negative straight leg 
raise, and normal sensation. To be met, listing 1.04 requires disorders of the 
spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, 
osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), 
resulting in compromise of a nerve root (including the cauda equina) or the 
spinal cord with other factors as detailed in listing 1.04. The claimant has 
diagnoses to support the severe impairments listed herein. There is 
medication prescribed, and some treatment with injections, but her diagnoses 
and descriptions in her records do not support listing level severity. Treating 
records indicate that she has a history of L3-L4 disc bulge with severe left 
foraminal stenosis and mild canal stenosis, moderate bilateral foraminal 
stenosis and broad based disc bulge at L4-L5 with bilateral facet arthropathy, 
and is status post decompressive laminectomy and foraminotomy at L3-L4-
L4-L5 in 2016. She received a lumbar steroid injection at L4 on November 
9, 2018. At that time, notes reveal that she receives relief with injections for 
several weeks to a month each time. Treatment notes also indicate that she 
has been referred for hernia laparoscopic ventral incisional hernia repair. 
Even so, those notes indicate that she ambulates without difficulty. Although 
the claimant’s treatment records show complaints of pain and pain 
management, there are no radiological findings to support listing level 
severity of this impairment. 
R. 18 (internal citations omitted). The ALJ found that Plaintiff “may have pain and some 
neurological impacts, but nothing indicates an inability to ambulate effectively anywhere 
in the record.” R. 19. 

At Step Three, the ALJ set forth the pain standard and her duty to determine if 
“statements about the intensity, persistence, and limiting effects of pain” are supported by 
objective medical evidence. R. 20. The ALJ stated that she reviewed Plaintiff’s responses 
to multiple submitted forms as well as the testimony she provided at the hearing. R. 17–
18. The ALJ stated that she also considered listings analysis conducted at Step Two, the 

opinion evidence, and the treating records, and found that some limitations do exists, “but 
not to the level of severity alleged by the plaintiff.” R. 21. The ALJ noted that the 
limitations she has assigned are “consistent with and supported by the records and reports 
obtained from the treating physicians and with the evidence as a whole” and stated: 
Though she alleges complete debilitation with respect to her physical 
abilities due to her impairments, they do not actually appear to involve 
symptom severity that would preclude performance of a range of sedentary 
exertional activity. While she might be limited with respect to performance 
of great exertion and or heavy labor, there is nothing that would suggest 
preclusion of this level work. Therefore, and as supported by the evidence, 
we will limit her exertionally to a sedentary RFC. There is insufficient 
evidence of greater musculoskeletal or systemic problems/weakness that 
would justify more significant restrictions. She can climb ramps and stairs, 
but never climb ladders, ropes, or scaffolds; balance frequently; sto[o]p 
occasionally; kneel occasionally; crouch occasionally; and crawl 
occasionally. This takes her lumbar issues into consideration as well as her 
hernia pre repair. In addition, she can occasionally operate motor vehicles 
and work around machinery. Due to her complaints, I limited her to the above 
restrictions. There is insufficient evidence of greater musculoskeletal or 
systemic problems that would justify more significant restrictions. Potential 
medication side effects, justifies the incorporation of exertional as well as 
environmental restrictions such that she should perform work tasks in a space 
where she would not be around workplace hazards such as unprotected 
heights. 

R. 21. 
When reviewing subjective complaints, such as subjective pain testimony, and 
making a credibility determination based upon them, “the ALJ must either explicitly 
discredit such testimony or the implication must be so clear as to amount to a specific 
credibility finding.” Foote, 67 F.3d at 1561; see also Dyer v. Barnhart, 395 F.3d 1206, 
1210 (11th Cir. 2005) (“‘Although this circuit does not require an explicit finding as to 
credibility, . . . the implication must be obvious to the reviewing court.’”) (citations 
omitted). “The credibility determination does not need to cite ‘particular phrases or 
formulations’ but it cannot merely be a broad rejection which is ‘not enough to enable [the 

court] to conclude that [the ALJ] considered her medical condition as a whole.’” Id. at 
1210–11 (citations and internal quotes omitted). 
Here, the ALJ properly applied the Holt pain standard by finding that Plaintiff met 
the first prong of the pain standard, which requires evidence of an underlying medical 
condition, but found that Plaintiff failed to set forth the required “objective medical 

evidence that confirms the severity of the alleged pain arising from that condition” or “that 
the objectively determined medical condition is of such a severity that it can be reasonably 
expected to give rise to the alleged pain.” Holt, 921 F.2d at 1223. The ALJ reviewed 
Plaintiff’s testimony of daily activities, the medical records, and the medications and 
procedures used to control her pain, and concluded that while Plaintiff does experience 

pain that requires some limitations, the record does not support limitations to the level as 
alleged. While the ALJ did not explicitly discredit Plaintiff’s testimony of debilitating 
pain, the implication of the credibility finding makes it obvious and clear to this Court that 
the ALJ considered Plaintiff’s pain testimony. See Carman v. Astrue, 352 F. App’x 406, 

408 (11th Cir. 2009) (finding that where the ALJ did not explicitly recite a formulaic 
credibility determination, “[t]he ALJ articulated various inconsistencies in [the claimant’s] 
evidence that a reasonable person could conclude supported the ALJ’s finding that [the 
claimant’s] subjective complaints of pain were not entirely credible”). 
“[A] clearly articulated credibility finding with substantial supporting evidence in 

the record will not be disturbed by a reviewing court.” Foote, 67 F.3d at 1561–62. The 
Court finds the ALJ articulated the required reasons for her determination related to 
discrediting Plaintiff’s subjective complaints of pain and finds them to be supported by 
substantial evidence. 
B. Evaluation of the severity of Plaintiff’s mental impairments. 

 i. Failure to evaluate evidence of psychiatric symptoms. 
Next, Plaintiff argues that the “ALJ also erred by failing to consider the impact of 
[Plaintiff’s] mental functioning on her ability to work.” (Doc. 12) at 7. Specifically, 
Plaintiff argues that the ALJ failed to consider or evaluate “evidence of psychiatric 
symptoms” found within her testimony and also failed to “secure an evaluation from a 

psychologist or psychiatrist despite [Plaintiff’s] uncontradicted testimony that she 
struggles daily with tearfulness and low frustration tolerance/irritability.” (Doc. 12) at 7. 
The Commissioner properly points out that Plaintiff did not allege a disability because of 
any mental impairments in her initial application or at the administrative hearing. 
Essentially, the Commissioner argues that Plaintiff waived her right to raise this argument 
by not presenting it before the ALJ, the final decisionmaker in this case. 
On May 18, 2017, Plaintiff filed a Title II application for a period of disability and 

disability insurance benefits and a Title XVI for supplemental security income in which 
she alleged that her ability (both physically or mentally) to work was limited due to 
osteoarthritis and spinal stenosis, as well as the pain resulting from both conditions. R. 191. 
On November 15, 2018, Plaintiff attended a hearing before the ALJ where she testified that 
her impairments include: scoliosis of the spine, disc bulge, spinal stenosis, ventricle 

abdominal hernia, obesity with edema, shortness of breath, and headache disorder. R. 33. 
Plaintiff also testified that due to her pain and limitations she is “stressed out a lot,” she 
gets frustrated, she cries “every day, all day,” she is “in an uproar,” and generally is just 
not herself. R. 44–45. Plaintiff cites this testimony as “evidence of psychiatric symptoms,” 
arguing that “the ALJ erred by entirely ignoring the possibility that [she] has mental 

restrictions and failing to obtain a psychiatric or psychological consultative examination 
for the claimant.” (Doc. 12) at 7. 
The United States Supreme Court, focusing on the fact that Social Security 
proceedings are “inquisitorial rather than adversarial,” held that “[c]laimants who exhaust 
administrative remedies need not also exhaust issues in a request for review by the Appeals 

Council in order to preserve judicial review of those issues.” Sims v. Apfel, 530 U.S. 103, 
107–12 (2000); see also Loudermilk v. Barnhart, 290 F.3d 1265, 1268 n.1 (11th Cir. 2002), 
reh’g and reh’g en banc denied, 52 F. App’x 489, 2002 WL 31415797 (11th Cir. 2002) 
(“The Supreme Court has held that a Social Security claimant’s failure to raise an issue at 
the administrative level does not deprive a court of jurisdiction to consider the issue when 
it is raised for the first time during judicial proceedings.”). While there is no exhaustion 
requirement that would preclude raising an issue for the first time during federal appellate 

review,2 Eleventh Circuit precedent holds that claimants must meet their burden to 
establish a disability at the administrative level. 
For example, in Ingram v. Commissioner of Social Security Administration, the 
claimant argued before the district court that the she testified before the ALJ that she took 
a special education class, but the ALJ failed to develop the record to determine her mental 

capabilities. 496 F.3d 1253, 1260 (11th Cir. 2007). The claimant also submitted a 
psychological evaluation to the Appeals Council indicating “mental retardation” that was 
not previously presented before the ALJ, but after reviewing the evidence the Appeals 
Council denied review. Id. The Eleventh Circuit held that “[e]ven though Social Security 
courts are inquisitorial, not adversarial, in nature, claimants must establish that they are 

eligible for benefits.” Id. at 1269. The Eleventh Circuit further stated that “[the claimant] 
had an obligation to raise an issue as to her mental capacity at her hearing. The 
administrative law judge had enough information to resolve [the claimant’s] application.” 
Id. Thus, the Eleventh Circuit concluded that the claimant’s argument that the ALJ “failed 
to develop the record as to her mental capacity” was erroneous and that the ALJ did not err 

by not inquiring into the claimant’s mental capacity. Id. 

2 Plaintiff did not raise any argument or submit any new medical evidence to the Appeals Council 
that she suffers from any mental impairment that might limit her ability to work. R. 244. 
Similarly, in Sullivan v. Commissioner of Social Security, the claimant argued that 
the ALJ failed to consider two doctors’ reports and address her impaired fine motor skills 
due to her brachydactyly and syndactyly. 694 F. App’x 670, 671 (11th Cir. 2017). The 

Eleventh Circuit noted that the claimant was represented by counsel and carries the burden 
to prove that she is disabled. Id. The Eleventh Circuit further noted the claimant “did not 
allege these conditions in her application nor did she raise them at her hearing before the 
ALJ.” Id. The Eleventh Circuit held that “[i]n a case like this, persuasive authority 
convinces us that this claim cannot proceed because [the claimant] failed to allege it to the 

ALJ and therefore could not have proven her disability on this basis,” and “[w]e therefore 
find no reversible error by the ALJ on this claim.” Id. 
In this case, Plaintiff argues that her testimony that she is “stressed out a lot,” she 
gets frustrated, she cries “every day, all day,” she is “in an uproar,” and generally is just 
not herself is enough evidence of a mental impairment that the ALJ should have inquired 

further. However, Plaintiff has not cited to, nor can the undersigned locate within the 
record, medical evidence that could establish mental impairments that lasted, or were 
expected to last for at least twelve months. In fact, the medical evidence of record 
contradicts Plaintiff’s claims that she has suffered any mental impairments. For example, 
on November 29, 2016, Dr. Harold A. Foster, MD, conducted a neurological and 

psychiatric mental status review of Plaintiff and found that Plaintiff’s judgment and insight 
was intact; that she was oriented to person, place, time; and that she had a normal mood 
with appropriate affect. R. 422. On January 3, 2017, Dr. Njedeka Obiekwe, MD, noted 
upon review that Plaintiff was negative for psychiatric issues. R. 429. On August 2, 2017, 
Dr. David Herrick, MD, at CFP Auburn/Opelika conducted a mental status examination 
and noted that Echols was “grossly oriented to person, place and time. Judgement and 
insight intact.” R. 440. 

Further, on March 16, 2018, Plaintiff filled out the Alabama Department of Public 
Health Annual Patient Self Health History Form and Plaintiff responded “no” to questions 
regarding whether she has ever been told that she has depression and whether she thinks 
she has depression or anxiety. R. 447. On August 14, 2018, just three months prior to the 
hearing before the ALJ, Dr. Foster did another mental status review of Plaintiff and noted 

that she was oriented to person, place, and time, and that her mood was normal with an 
appropriate affect. R. 463. Finally, on August 16, 2018, East Alabama Medical Center 
performed a psychosocial screening and noted that Plaintiff was not “exhibiting 
emotional/behavioral signs and symptoms (i.e. suicidal, homicidal, mental illness, 
depression, OD, etc.).” R. 482. 

Plaintiff, who is represented by counsel, has also failed to submit any “new, 
material, and chronologically relevant evidence” to support a claim that her ability to work 
is limited by a mental impairment before the Appeals Council and this Court. Ingram, 496 
F.3d at 1261 (“The Appeals Council must consider new, material, and chronologically 
relevant evidence and must review the case if ‘the administrative law judge’s action, 

findings, or conclusion is contrary to the weight of the evidence currently of record.’”). 
Plaintiff’s testimony during the hearing before the ALJ is simply not enough to meet her 
burden of proving that her impairment is severe and that she is eligible for benefits, 
particularly in light of the medical evidence that contradicts her claim. Therefore, the Court 
finds that Plaintiff has waived her right to raise the argument before the Court and, further, 
that the Commissioner’s decision is supported by substantial evidence. See Smith ex rel. 
J.T.H. v. Astrue, 2008 WL 2559392, at *3 (M.D. Ala. June 24, 2008) (“Given that, at step 

two of the inquiry, the burden of proof is on claimant to prove an impairment is severe and 
more than a mere, slight abnormality, and [the plaintiff] plainly had the opportunity on at 
least two occasions to claim recurrent upper respiratory infection as a disabling condition, 
the Court finds her failure constitutes a waiver of her right to raise the argument before this 
Court.”). 

 ii. Failure to secure a mental consultative examination. 
Finally, Plaintiff asserts that the ALJ failed to “secure an evaluation from a 
psychologist or psychiatrist despite [Plaintiff’s] uncontradicted testimony that she 
struggles daily with tearfulness and low frustration tolerance/irritability.” (Doc. 12) at 7. 
The regulations provide that an ALJ “may” refer a claimant to “one or more physical or 

mental examinations or tests” if the medical sources do not provide “sufficient medical 
evidence about [the claimant’s] impairment for [the ALJ] to determine whether [the 
claimant is] disabled.” 20 C.F.R. § 404.1517. While the ALJ has complete discretion over 
ordering a consultative examination, it is “reversible error for an ALJ not to order a 
consultative examination when such an evaluation is necessary for [her] to make an 

informed decision.” Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citing Ford 
v. Sec’y of Health & Human Servs., 659 F.2d 66, 69 (5th Cir. 1981) (holding that “the 
administrative decision is not supported by substantial evidence if the administrative law 
judge does not have before [her] sufficient facts on which to make an informed decision.”). 
In Street v. Barnhart, this District was faced with an analogous fact pattern. 340 F. 
Supp. 2d 1289 (M.D. Ala. 2004). The plaintiff alleged on appeal that the ALJ erred by not 
finding his mental impairments to be severe in nature and for failing to order a consultative 

mental examination. Id. at 1293. This Court found that the record was “devoid of evidence 
that the plaintiff’s depression lasted, or was expected to last, for twelve months [. . .] and 
therefore [could not] conclude that the ALJ was required to consider plaintiff’s depression 
‘severe’ or to find the plaintiff disabled on account of it.” Id. This Court concluded that 
the ALJ “was entitled to disregard” the plaintiff’s depression from the analysis and turned 

to the plaintiff’s argument that the ALJ was required to order a consultative examination 
to evaluate his mental state. Id. Following a review of the relevant medical evidence, the 
court found the record devoid of any “diagnosis, treatment, or other evidence of 
depression” other than as temporary phenomenon in 1998 caused by physical limitations 
that had since been abated. Id. This Court stated that “[t]he fact that the plaintiff did not 

before his appeal (whether in his own testimony or through counsel) raise the question of 
his alleged depression also suggests that he was not suffering significantly from it at the 
time of the hearing.” Id. The court found the record to be sufficient and concluded that it 
was adequate to support an informed decision. Id. 
Like this Court previously determined in Street, the record here is not only devoid 

of any medical evidence to support Plaintiff’s claim of a mental impairment, it contradicts 
such a notion. The only support in the record for Plaintiff’s argument are a few sporadic 
statements made during the hearing before the ALJ. See Sneed v. Barnhart, 214 F. App’x 
883 (11th Cir. 2006) (Where the claimant testified to “behavior seemingly consistent with 
depression” and submitted medical evidence four months after the ALJ’s decision, the 
Eleventh Circuit held that it was “unclear how the ALJ erred in failing to consider this 
evidence and to request any consultative examinations based upon it before determining 

that [the claimant] did not suffer from a severe mental impairment.”); Street v. Barnhart, 
133 F. App’x 621, 630 (11th Cir. 2005) (holding that the ALJ’s failure to order a 
consultative psychological examination solely based upon the claimant’s testimony that he 
“can’t stand crowds” was not error because he “and his counsel failed to cite anything other 
than a physical condition as the basis for [the claimant’s] disability in his application and 

in his testimony at [the hearing]”). The undersigned finds the record to be sufficiently 
developed to make an informed determination on Plaintiff’s application. See Ingram, 496 
F.3d at 1269 (“[The claimant] had an obligation to raise an issue as to her mental capacity 
at her hearing. The administrative law judge had enough information to resolve [the 
plaintiff’s] application.); Good v. Astrue, 240 F. App’x 399, 403 (11th Cir. 2007) (holding 

“no other physician recommended an additional consultation, and the record was 
sufficiently developed for the ALJ to make a determination,” and that “remand was not 
warranted.”). Therefore, the undersigned concludes that the ALJ did not err by failing to 
order a psychiatric evaluation. 
VII. CONCLUSION 

Based on the foregoing, the undersigned concludes that the Commissioner’s 
decision is supported by substantial evidence and is based upon the proper legal standards. 
Accordingly, the decision of the Commissioner is AFFIRMED. 
A final judgment will be entered separately. 
DONE this the 1st day of October, 2020. 

 /s/ Stephen M. Doyle 
 CHIEF UNITED STATES MAGISTRATE JUDGE